UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID COGAN,

                Plaintiff,

v.                                                    1:12-CV-1090
                                                    (GTS/RFT)

NAT'L R.R. PASSENGER CORP. d/b/a AMTRAK,

                Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

SALAZAR and ERIKSON LLP                DANA L. SALAZAR, ESQ.
  Counsel for Plaintiff
573 Columbia Turnpike, Building 2
East Greenbush, NY 12061

LANDMAN CORSI BALLAINE & FORD P.C.    ANDREW J. KORNBLAU, ESQ.
  Counsel for Defendant                          JOHN A. BONVENTRE, ESQ.
One Gateway Center
Suite 400
Newark, NJ 07102-5311

HON. GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

       Currently before the Court, in this FELA action filed by plaintiff, David Cogan ("Plaintiff") are a motion for partial summary judgment and a supplemental motion for summary judgment by defendant, National Railroad Passenger Corporation, doing business as Amtrak ("Defendant" or "Amtrak"). *See* Dkt. Nos. 19, 25. For the reasons set forth below, Defendant's motion for partial summary judgment is granted and Defendant's supplemental motion for summary judgment is granted in part and denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claim

Generally, Plaintiff's Complaint asserts a claim to recover damages from Defendant for personal injuries under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA"). (*See generally* Dkt. No. 1 [Pl.'s Compl.].)

Plaintiff alleges that during his employment with Defendant, he "was exposed to occupational risk factors for serious injuries, including, but not limited to, injuries to his elbows and back[] as a result of actions required during his employment including, but not limited to, repetition, force, overweight baggage and awkward lifting positions." (*Id.*, at ¶ 14.) More specifically, Plaintiff alleges that, "while working within the course and scope of his employment[, he] was injured due to unsafe and inadequate working conditions, including, but not limited to, lifting and handling overweight baggage at stations with low platforms." (*Id.*, at ¶ 24.) As a result, Plaintiff alleges, he sustained injuries to his elbows and lower back. Plaintiff further alleges that his injuries were caused by the negligence of Defendant.

### B. Recitation of Undisputed Facts

The following material facts[1] are gleaned from Defendant's Local Rule 7.1 Statement of Undisputed Material Facts and Plaintiff's response thereto (*see* Dkt. No. 19-2 [Def.'s Rule 7.1 Statement in Support of its Mot. Partial Summ. J.]; Dkt. No. 25-2 [Def.'s Rule 7.1 Statement in Support of its Supp. Mot. Summ. J.]; Dkt. No. 32-3 [Pl.'s Resp. to Def.'s Rule 7.1 Statement]) as well as Plaintiff's Local Rule 7.1 Counter Statement of Facts (*see* Dkt. No. 32-3 [Pl.'s Rule 7.1 Counter Statement], where supported by the record.

---

[1] Conclusions of law in a Local Rule 7.1 Statement, even when unopposed, are not deemed admitted. *See Johnson v. Enu*, No. 08-CV-158, 2011 WL 3439179, at *1 (N.D.N.Y. July 13, 2011), *adopted in its entirety by*, 2011 WL 3439524 (N.D.N.Y. Aug. 5, 2011).

Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. *See* N.D.N.Y. L. R. 7.1(a)(3). It further provides that, to the extent that the nonmoving party fails to do so, the facts asserted in the movant's Statement of Material Facts will be deemed admitted, as long as they are supported by the record. *Id*.

Plaintiff has been employed with Defendant since June of 1991. Plaintiff began his employment as a lead service attendant and became an assistant yard or passenger conductor in 1994.

In response to Defendant's interrogatory seeking "a detailed description of each and every injury . . . caused by defendant[,]" Plaintiff asserts that he "has suffered a back injury and two elbow injuries that developed over time because of, among other things, (1) lifting and moving luggage, in particular at station stops with so-called low platforms; (2) boarding up and down trap steps; (3) fighting and struggling with inoperable and/or frozen doors and trap doors; (4) using crowbars and sledge hammers to open and then close doors and trap doors; and (5) shoveling snow and salting vestibules." (Dkt. No. 19-5 at ¶ 3 [Pl.'s Response to Def.'s First Set of Interrogs.].) Plaintiff alleges that his injuries resulted from Defendant's failure to provide him with a reasonably safe workplace.

At his deposition, Plaintiff testified that lifting and moving luggage at low-platform steps caused or contributed to his injuries because it involved "repetitive motions in awkward positions with heavy luggage, and a lot of it." (Dkt. No. 19-7 at 66:8-12 [Dep. of David Cogan, Feb. 13, 2013].) Plaintiff also testified that he would have flare-ups of his back pain that were caused by "lifting" and "[f]ighting with the traps, fighting with the equipment." (Dkt. No. 19-8 at 88:15-89:5 [Cogan Dep.].)

On May 2, 2003, Plaintiff noted that he had been having back problems on a medical history questionnaire during treatment with Dr. Marc Fuschs. On a November 4, 2004 medical history questionnaire, Plaintiff again noted lower back problems and indicated he had seen a chiropractor for same. On January 7, 2008, Plaintiff complained to his chiropractor, Dr. Timothy Kelly, of lower back pain as a result of lifting bags and shoveling. Plaintiff indicated that he has had similar back problems in the past. Plaintiff treated with Dr. Kelly twenty-one times for back pain between January 7 and May 9, 2008. On April 29, 2009, Plaintiff again saw Dr. Kelly for low back pain from "riding the train." Plaintiff resumed weekly chiropractic treatments with Dr. Kelly through June 19, 2009.

At his February 13, 2013 deposition, Plaintiff admitted that he experienced back pain more than three years before filing his Complaint in this action. Plaintiff testified that he first developed back pain around 2003 or 2004, when his back was sore after work. Plaintiff also recalled seeking medical treatment for his back pain with Dr. Laximant Bhouwla, his primary care physician, in 2006 or 2007. Plaintiff testified that he probably discussed the lifting of luggage with Dr. Bhouwia. Plaintiff further recalled seeking chiropractic treatment for his back symptoms with Dr. Kelly as early as 2002 or 2003.

Plaintiff testified that by as early as 2006 or 2007, he believed his job as a conductor with Defendant caused or contributed to his back injuries, noting that he would go home every night in a lot of pain.

Plaintiff's named expert, Dr. Eun Kyung Bahn, issued a report dated October 30, 2013, noting that Plaintiff has been treated at her surgical group for his "intractable back and leg pain" since June 2011. (Dkt. No. 32-10 at 16 [Ex. B to Pl.'s Expert Disclosure].)[2] Dr. Bahm opines "that there is a causal relationship between [Plaintiff's] work with [Defendant] and his conditions. More specifically, [Plaintiff's] injury is 50% attributable to snow shoveling in March 2011 and exacerbated by an Amtrak accident in May of 2011." (*Id.*) Elsewhere in his expert disclosure, Plaintiff references "workplace injuries" he sustained on March 8, 2011 and May 19, 2011. (*See* Dkt. No. 25-11 at ¶ 15.)

On March 8, 2011, Plaintiff presented to physician assistant, Dennis B. Cicchino with "back pain, (sic) shoveling snow yesterday at home." (Dkt. No. 25-11 at 9 [Ex. G to Aff. of Andrew J. Kornblau, Dec. 17, 2013].) Plaintiff testified that his back flare-ups became constant in 2011 and that working caused his pain to get worse. (Pl.'s Dep., 90:8-91:2, 92:10-14.) Plaintiff further testified that his elbow pain began in 2009 when he was lifting luggage at work. (*Id.*, 103:4-16, 107:3-18.)

### C. Defendant's Motions

Generally, in support of its motion for partial summary judgment, Defendant argues that Plaintiff's claim regarding his back injury is barred by the statute of limitations because he was aware of that injury more than three years prior to the filing of his Complaint. (*See generally* Dkt. No. 19-10 [Def.'s Mem. of Law in Support of its Mot. for Partial Summ. J.].) Generally, in support of its supplemental motion for summary judgment, Defendant asserts the following arguments: (1)

---

[2] Because Defendant is not prejudiced by this Court's consideration of Plaintiff's proffered expert report, the Court need not, and does not, rule on its admissibility at this time.

Plaintiff has failed to produce any evidence that Defendant did not provide him with a reasonably safe place to work, and (2) Plaintiff has failed to provide any expert testimony demonstrating that his back injury was caused by exposure to repetitive stress or cumulative trauma. (*See generally* Dkt. No. 25-1 [Def.'s Mem. of Law in Support of its Supp. Mot. for Summ. J.].)

Generally, in response to Defendant's motions, Plaintiff asserts the following arguments: (1) Defendant's motion for partial summary judgment should be denied because (a) Defendant does not challenge Plaintiff's elbow injuries on its motion for partial summary judgment, (b) Plaintiff sustained distinct back injuries with distinct causes after 2009, and (c) Plaintiff's prior back injuries were temporary; and (2) Defendant's supplemental motion for summary judgment should be denied because a rational juror could conclude that Defendant violated the FELA and contributed to Plaintiff's injuries. (*See generally* Dkt. No. 32-1 [Pl.'s Opp'n Mem. of Law].)

Generally, in its reply memorandum of law, Defendant asserts the following arguments: (1) Plaintiff has failed to provide any evidence demonstrating that Defendant breached its duty to provide him with a reasonably safe place to work, (2) Plaintiff knew of his back injury and its potential causes more than three years before the filing of his Complaint, and (3) Plaintiff has failed to provide any expert testimony demonstrating that his back injury was caused by exposure to repetitive stress or cumulative trauma. (*See generally* Dkt. No. 37 [Def.'s Reply Mem. of Law].)

## II.     GOVERNING LEGAL STANDARDS

### A.     Standard Governing a Motion for Summary Judgment

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute as to a material fact exists, the

Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598 (1970)). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must identify evidence in the record that creates a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)). This standard applies "whether summary judgment is granted on the merits of the claim, or on an affirmative defense such as the statute of limitations." *BellSouth Telecomm., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 609 (2d Cir.1996).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (citation omitted).

As for the genuineness requirement, a dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Id.* As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted; emphasis added).[3]

---

[3] As the Supreme Court has famously explained, "[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86, 106 S. Ct. 1348

7

Similarly, inadmissible hearsay is insufficient to create a genuine issue of fact, "absent a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (citations omitted).

    **B.**    **Standards Governing Plaintiff's FELA Claim**

Section 1 of FELA provides that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542, 114 S. Ct. 2396, 2403 (1994) (quoting 45 U.S.C. § 51). When Congress enacted FELA, its "attention was focused primarily upon injuries and death resulting from accidents on interstate railroads." *Urie v. Thompson*, 337 U.S. 163, 181, 69 S. Ct. 1018, 1030 (1949). Cognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year, Congress crafted a federal remedy that shifted part of the "human overhead" of doing business from employees to their employers. *Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54, 58-59, 63 S. Ct. 444, 447 (1943); *see also Gottshall*, 512 U.S. at 542, 114 S. Ct. at 2404. In order to further FELA's humanitarian purposes, Congress "did away with several common-law tort defenses that had effectively barred recovery by injured workers." *Gottshall*, 512 U.S. at 542, 114 S. Ct. at 2404. Consequently, courts have "liberally construed" FELA to further Congress' remedial goal. *Id.* at 543, 114 S. Ct. at 2404. For example, the Court held in *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506, 77 S. Ct. 443, 448 (1957), that a relaxed standard of causation applies under FELA. *See Gottshall*, 512 U.S. at 543, 114 S. Ct. at 2404 (citing *Rogers*, 352 U.S. 500, 77 S. Ct. 443). Toward

---

(1986) (citations omitted).

that end, the Court stated that "[u]nder this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers*, 352 U.S. at 506, 77 S. Ct. at 448.

"That FELA is to be liberally construed, however, does not mean that it is a workers' compensation statute." *Gottshall*, 512 U.S. at 543, 114 S. Ct. at 2404. The Supreme Court has "insisted that FELA 'does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur.'" *Id.* (quoting *Ellis v. Union Pacific R. Co.*, 329 U.S. 649, 653, 67 S. Ct. 598, 600 (1947)). A plaintiff bringing a FELA action must still demonstrate the four common law elements of negligence: duty, breach, foreseeability, and causation. *See Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006). "A railroad may be liable under FELA for failure to provide a safe workplace 'when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees.'" *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 826 (2d Cir.1994) (quoting *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 84-85 (2d Cir.1989)). Significantly, the essential element of reasonable foreseeability in FELA actions, requires proof of actual or constructive notice to the employer of the defective condition that caused the injury. *See Gallose*, 878 F.2d at 85 ("The catalyst which ignites [the duty to provide a safe workplace] is knowledge, either actual or constructive.").

Under FELA, "the case must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff." *Syverson*, 19 F.3d at 828 (2d Cir.1994) (citing *Gallick v. Baltimore and O.R. Co.*, 372 U.S. 108, 120-21, 83 S. Ct. 659, 667 (1963)). On the other hand, although FELA plaintiffs are entitled to have reasonable inferences drawn in their favor from the facts, they may not survive a motion for summary judgment when the inferences they ask a court to draw are mere possibilities. *See Connors v. Consol. Rail Corp.*, No. 90-CV-464, 1993 WL 169646, at *8 (N.D.N.Y. May 19, 1993) (citing *Gibson v. American Broadcasting Cos. Inc.*, 892 F.2d 1128, 1132 (2d Cir.1989)).

Finally, claims under the FELA must be brought within three years of their accrual. *See* 45 U.S.C. § 56 ("No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued.") "With respect to 'gradual injuries'-those which occur gradually, over long periods of time, due to ongoing exposure to harmful working conditions-the Supreme Court has adopted a 'discovery rule' and held that the FELA statute of limitations accrues when the injury 'manifest[s]' itself, taking into account whether the plaintiff 'should have known' of his injury." *Mix v. Delaware and Hudson Ry. Co.*, 345 F.3d 82, 86 (2d Cir. 2003) (quoting *Urie*, 337 U.S. at 170, 69 S. Ct. 1018). The Court later explained that, under this "discovery rule," a plaintiff's cause of action accrues when he discovers both the existence and the cause of his injury. *Mix*, 345 F.3d at 86 (citing *United States v. Kubrick*, 444 U.S. 111, 120-125, 100 S. Ct. 352 (1979)). The Court of Appeals for the Second Circuit has held that, in the context of a claim involving gradual injuries, "a plaintiff can recover for injuries suffered during the three-year period preceding the suit, if these injuries are sufficiently distinct from those previously suffered." *Mix*, 345 F.3d at 90. Further, the Circuit held, [a] plaintiff can ... recover for aggravation to existing injuries,

provided that the aggravation was caused by a distinct act of negligence whose existence and relationship to the injury was unknown prior to the three-year period preceding the suit." *Id*.

In determining whether an injury is "distinct" the Second Circuit instructs that "a plaintiff may maintain a claim for [accumulated effects of harmful working conditions] if he proffers evidence suggesting that his initial symptoms were temporary in nature, and based upon their accumulation, became permanent injuries only during the three-year period preceding his suit." *Mix*, 345 F.3d at 90-91. Regarding a plaintiff's assertion of a distinct cause of his injury, the Second Circuit instructs that he "may collect damages only for the distinct injury or the degree of the injury resulting from the distinct cause." *Id*., at 91.

## III.     ANALYSIS

### A.     Whether Plaintiff's FELA Claim is Barred By the Statute of Limitations

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated by Defendant in its memorandum of law and reply memorandum of law. (Dkt No. 19-1 [Def.'s Mem. of Law]; Dkt. No. 37 at 3-9 [Def.'s Reply Mem. of Law].) The Court would add the following analysis.

Defendant has identified record evidence in support of its statute of limitations defense that Plaintiff's FELA claim, relative to his back injury, accrued more than three years prior to the commencement of this action.[4] Specifically, Plaintiff testified that, as late as 2007, he was aware

---

    [4]     Although Plaintiff argues, in opposition to Defendant's motion for partial summary judgment, that Defendant fails to allege that Plaintiff knew of his elbow injury and its cause prior to July of 2009, Defendant clearly seeks summary judgment on its statute of limitations defense solely regarding Plaintiff's FELA claim as it relates to his back injury. *See* Dkt. No. 19-10 at 1 [Def.'s Mem. of Law] ["Because Plaintiff's cause of action relative to his back injury accrued more than three years before the filing of his Complaint, it is barred by the FELA's three-year statute of limitations."].)

both that he was suffering from a back injury and that his employment was a cause or contributing factor of that injury. Moreover, medical records reflect that Plaintiff complained of back pain as early as 2003 and that he was being treated by a chiropractor for back pain caused by lifting bags and shoveling in early 2008 and again for back pain caused by riding the train in the Spring of 2009.

In opposition, Plaintiff asserts, for the first time, that he suffered a distinct injury with distinct causes, in 2011. In support, Plaintiff cites his own affidavit, prepared in opposition to Defendant's motion for partial summary judgment, that he "suffered the back and elbow injuries at issue in this case on or after July 9, 2009." (Dkt. No. 32, ¶ 3 [Cogan Aff., Jan. 21, 2014].) Plaintiff also cites the October 30, 2013 report of his proffered expert, neurosurgeon, Dr. Baum, that "there is a causal relationship between [Plaintiff's] work . . . and his conditions [of intractable back and leg pain]." (Dkt. No. 32-10 [Ex. B. to Pl.'s Expert Disclosure].) Specifically, Dr. Baum opines that Plaintiff's "injury is 50% attributable to snow shoveling in March 2011 and exacerbated by an Amtrak accident in May of 2011." (*Id*.) In further support, Plaintiff alleges by affidavit that "[t]he March 2011 injury involved me shoveling snow at work and fighting with frozen pipes on the train. In addition, the May 2011 injury . . . involved a serious injury whereby the train that I was working on struck and killed a young man and, as a result, stopped abruptly." (Dkt. No. 32, ¶ 6 [Cogan Aff.].) Attached to Plaintiff's affidavit is a medical record of his examination at the Albany Memorial Hospital Emergency Department, dated May 22, 2011. (*See id.*, Ex. A.) Dr. David Golub, M.D., notes Plaintiff's report that "the jolt of the sudden stop after the accident triggered exacerbation of chronic left-sided low back pain" and that Plaintiff reports "he has had this in the past. It radiates to his left buttock." (*Id.*) Dr. Golub diagnosed "an exacerbation of chronic pain," provided Plaintiff with a short course of pain medication, and advised Plaintiff to follow up with his primary care physician. (*Id.*)

To be sure, there is nothing in Plaintiff's Complaint or interrogatory responses to put Defendant on notice of Plaintiff's assertion that he suffered a distinct injury caused by snow shoveling at work in March of 2011 and the train accident in May of 2011. In fact, Plaintiff's allegations in his interrogatory responses that his injuries "developed over time" as a result of "lifting and moving luggage, in particular at station stops with so-called low platforms[, . . .] fighting and struggling with inoperable and/or frozen doors and trap doors[, . . .] and[] shoveling snow[5] and salting vestibules" were reinforced with his deposition testimony. (*Compare* Dkt. No. 19-5 at ¶ 3 [Pl.'s Resp. to Def.'s First Set of Interrogs.] *with* Dkt. No. 19-7 at 65-77 and Dkt. No. 19-8 at 78-79, 89, 100-101, 103, 107, 117 [Cogan. Dep.].) This court need not reach the merits of these arguments because they are raised for the first time in opposition to Defendant's motion for summary judgment. *See Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (citing *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir.2006) (declining to reach merits of argument raised for first time in opposition to summary judgment); *Syracuse Broad. Corp. v. Newhouse*, 236 F.2d 522, 525 (2d Cir.1956) (holding that district court was "justified" in "brush[ing] aside" further argument not alleged in complaint but raised for first time in opposition to summary judgment)).

Moreover, even if the Court did reach the merits of these arguments, they are without support in the record. For example, the only evidence, aside from Plaintiff's self-serving affidavit, to support Plaintiff's assertion that he was injured while shoveling snow "at work" in "March 2011" is a medical record dated March 8, 2011, that Plaintiff presented to physician assistant, Dennis B. Cicchino with "back pain, (sic) shoveling snow yesterday *at home*." (Dkt. No. 25-11 at 9 [Ex. G to

---

[5] Specifically, regarding the shoveling of snow, Plaintiff testified that the door seals on the train were insufficient to keep snow from drifting inside. Consequently, Plaintiff testified, there would be four-feet drifts of snow between train cars that he would have to shovel during stops. (Dkt. No. 19-7 at 68-69 [Cogan. Dep.].)

13

Kornblau Aff.] [emphasis added].) Not coincidentally, Plaintiff's expert disclosure indicates that the specific date of Plaintiff's snow-shoveling injury is March 8, 2011. (Dkt. No. 32-10 at ¶15.) Where, as here, Plaintiff's affidavit is submitted in opposition to summary judgment, contains no factual support and is unsupported by admissible evidence, it cannot create a question of fact sufficient to withstand summary judgment. *See Walsh v. New York City Hous. Auth.*, No. 11-CV-6342, 2013 WL 6669381, at *10 (S.D.N.Y. Dec. 16, 2013) (citing *Shumway v. UPS*, 118 F.3d 60, 65 (2d Cir.1997)). Further, regarding Plaintiff's allegation that the May 2011 train accident was a distinct cause of his back injury, Plaintiff cites no evidence, admissible or otherwise, that Defendant was negligent in that regard. *Cf. Mix*, 345 F.3d at 91 (recognizing that a plaintiff may assert such a claim provided there is evidence that the additional damage was caused by a distinct act of negligence of which the plaintiff became aware only during the three-year period preceding his suit).

Also in opposition to Defendant's motion for partial summary judgment, Plaintiff argues that his injuries prior to the statute of limitations period were temporary in nature and did not become permanent until after July of 2009. To be sure, the Second Circuit has held "that a plaintiff may maintain a claim for 'accumulation' if he proffers evidence suggesting that his initial symptoms were temporary in nature, and based upon their accumulation, became permanent injuries only during the three-year period preceding his suit." *Mix*, 345 F.3d at 90-91. Consequently, the Court concluded, such a plaintiff "can survive summary judgment if he proffers evidence that, prior to [the commencement of the three-year statute of limitations period, his injury] caused only temporary discomfort as a result of his . . . working conditions, and that these symptoms did not manifest themselves as a cumulative, permanent injury until the three-year period preceding this action." *Id*. at 91. The Court in *Mix* relied heavily on the decision of the Court of Appeals for the Sixth Circuit in *Fonseca v. Consolidated Rail Corp.*, 246 F.3d 585 (6th Cir. 2001). In *Fonseca*, the Court

reversed the underlying decision granting summary judgment to defendant based on the plaintiff's unequivocal testimony that the frequent discomfort he experienced for three decades was not continuous and would subside the following day and that the pain never increased prior to the limitations period. *See Fonseca*, 246 F.3d at 591. Here, Plaintiff's back pain, unlike the pain experienced by the plaintiff in *Fonseca*, described by him as the "normal discomfort of a day's work," did not disappear the next day. *See id.*, at 590. Instead, the medical records suggest, and Plaintiff's testimony supports, that Plaintiff's "flare-ups" of back pain would last for a couple of months at a time. (*See* Dkt. No. 19-8 at 88-89 [Cogan Dep.]; Dkt. 19-3 at Exs. E-H [Kornblau Aff.].) Moreover, Plaintiff's argument that prior to the limitations period his back pains were temporary and "can be characterized as typical back aches from manual labor" is belied by his deposition testimony. (Dkt. No. 32-1 at 7 [Pl.'s Opp'n Mem. of Law].) Far from experiencing the "normal discomforts of a day's work," Plaintiff testified that he would go home "every night" in pain, which he described as "[n]ot just a back ache, a lot of pain." (Dkt. No. 102 [Cogan Dep.].) Consequently, the evidence shows that Plaintiff's back injury prior to July 9, 2009 was not temporary and that his injury during the limitations was an aggravation of his continuous back pain and no reasonable jury could find otherwise.

For all of these reasons, Defendant's motion for partial summary judgment regarding Plaintiff's FELA claim solely as it relates to his back injury, is granted.

> **B.** **Whether Questions of Fact Exist for a Jury to Decide Regarding Plaintiff's Claim that Defendant Breached its Duty to Provide Plaintiff With A Safe Place to Work As It Relates to His Elbow Injuries**

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated by Plaintiff in his memorandum of law. (Dkt No. 32-1, at 8-10 [Pl.'s Mem. of Law].) The Court would add the following analysis.

In support of its supplemental motion for summary judgment, Defendant argues that Plaintiff's FELA claim must be dismissed because Plaintiff has failed to provide any evidence that Defendant breached its duty to provide him with a reasonably safe place to work. More specifically, Defendant argues that Plaintiff cannot establish a question of fact regarding breach of duty based solely on his testimony and that Plaintiff is required to submit expert testimony to establish that his alleged exposure to repetitive stress is an unsafe working condition, but failed to do so. Plaintiff counters that Defendant's motion should be denied because the record demonstrates that Defendant created a dangerous condition and failed to remedy safety hazards.

It is undisputed that Defendant had a duty to provide its employees with a safe workplace. *See Tufariello*, 458 F.3d at 91 (2d Cir. 2006) (citing *Ulfik v. Metro-North Commuter R.R.*, 77 F.3d 54, 58 (2d Cir.1996)). In order to establish that Defendant breached its duty, Plaintiff must prove that Defendant "knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees," including Plaintiff. *Id.*

Here, the record includes testimony from Plaintiff that Defendant has a fifty-pound weight restriction for passenger luggage, but does not enforce that restriction. (Dkt. No. 25-9 at 60, 69 [Cogan Dep.].) Plaintiff further testified that his job description requires the lifting of luggage up to fifty pounds. (*Id.* at 61.) Plaintiff explained that he has never refused to lift luggage that he felt was too heavy, but would get assistance from another conductor or the passenger. (*Id.* at 62-64.) Plaintiff agreed, therefore, that he did not enforce the luggage policy. (*Id.* at 69.) The record also includes Plaintiff's testimony that while he never made written complaints about the luggage, he made verbal complaints, but they would "fall on deaf ears." (*Id*. at 78.) Specifically, Plaintiff complained that there was too much luggage. Although he never received a response to his complaints, Plaintiff didn't complain too much because "if you complained too much, you would get

in trouble." (*Id*. at 79.) Plaintiff explained that "if you reported injuries [related to lifting luggage,] they said, well, you shouldn't have lifted it" but "[i]f you don't help passengers with their luggage, you're going to hear about it also." (*Id*. at 136.)

Plaintiff further testified that he first began experiencing right elbow pain in August of 2009 while he was lifting luggage, but that he did not complain to anyone or tell anyone at Amtrak about it. (*Id.* at 103-104.) Plaintiff's left elbow pain began in the Fall of 2009, again while lifting luggage. (*Id*. at 107.) Plaintiff also testified that, as of the time of his deposition, Defendant had come out with a new policy in 2012 limiting passengers to two bags. Plaintiff testified that prior to the new policy, he was not able to enforce the luggage limit. (*Id*. at 131-133.)

Martin E. Rauch, who is employed by Defendant as a Trainmaster, testified that the weight of baggage is determined by the passenger and conductors do not have a means of weighing baggage. (Dkt. No. 32-12 at 46-47 [Dep. of Martin E. Rauch, Fen. 17, 2013].) Rauch further testified that while conductors could refuse to board a passenger with too many bags, the conductor could also offer the option of boarding with fewer bags. (*Id*. at 48.) However, a train is only in a station for an average of three minutes and any delay due to a rejected bag would require that the conductor complete paperwork documenting the reason for the delay. (*Id*.)

On a similar record, the Court of Appeals for the Second Circuit has found that a reasonable factfinder could conclude that a defendant railroad breached its duty to provide a reasonably safe workplace. *See Tufariello*, 458 F.3d at 91 (where plaintiff testified that he endured repeated exposure to loud horns that caused him physical pain and that he and others complained about the loud noise and requested hearing protection but were denied, a jury could find that the railroad breached its duty of ensuring its workers were protected from extremely loud noises). Here, Plaintiff testified that he experienced elbow pain while lifting luggage and that he complained about the luggage limit not being enforced, but that Defendant did not enforce its luggage policy until

17

2012, after Plaintiff underwent surgery on each of his elbows. A reasonable juror could find, based on this evidence, that Defendant breached its duty to ensure that its workers were not exposed to excessive lifting of passenger luggage.

For this reason, Defendant's supplemental motion for summary judgment is denied insofar as it seeks summary judgment on Plaintiff's FELA claim related to his elbow injuries. Defendant's supplemental motion for summary judgment is granted to the extent it seeks summary judgment on Plaintiff's FELA claim as it relates to his back injury, but solely for the reasons stated in Part III.A. of this Decision and Order. In other words, Plaintiff's FELA claim regarding his back injury is barred by the statute of limitations.

Consequently, a trial in this action will be limited to Plaintiff's sole remaining FELA claim that Defendant's negligence associated with its failure to enforce its baggage weight policy played any part, even the slightest, in causing Plaintiff's elbow injuries. All other bases for Plaintiff's FELA claim have been dismissed for the reasons stated in this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for partial summary judgment (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that Defendant's supplemental motion for partial summary judgment (Dkt. No. 25) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that counsel are directed to appear on **MAY 15, 2015 at 11:00 am** in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than APRIL 15, 2015, and the parties are

directed to engage in meaningful settlement negotiations prior to the pretrial conference. In the event that counsel feel settlement is unlikely, counsel may request to participate via telephone conference for the limited purpose of scheduling a trial date by electronically filing a letter request at least one week prior to the scheduled conference.

Dated: March 27, 2015
   Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge

_____
Hon. Glenn T. Suddaby
U.S. District Judge